```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:07 CR 572 CEJ |
| | ) | DDN |
| DARWIN BECK, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing and a supplemental hearing were held on November 26 and December 7, 2007, respectively.

Defendant Darwin Beck has moved to suppress evidence (oral motion Doc. 23) and to suppress evidence and statements (Doc. 30); and the government has moved for determination by the court of arguably suppressible evidence (oral motion Doc. 25).

From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On September 25, 2007, at approximately 8:24 a.m. in the City of St. Louis a citizen made a 911 telephone call to the St. Louis Metropolitan Police Department. In somewhat anxious terms, the caller reported that a black man, about 30 years of age, wearing a green shirt and beige shorts was arguing with people while holding a gun, at 4735 McMillan Ave. The police dispatcher radioed Officers Steven Schwerb and Jason Chambers who were in uniform and in a marked police car on patrol in District 8, only two and one-half blocks from 4735 McMillan and directed that they respond to the call regarding the flourishing of a weapon. The officers did so and arrived two minutes after the call was received. As soon as they arrived, the officers left their vehicle and were met by DeWayne Long. Long told the officers that Darwin Beck had

just hit him with a gun on the back of his head. At this address is a four-family flat with common front porch. Long said that he and Beck live in separate apartments in the building. Long said that Beck went into his apartment, returned with a revolver, pointed it at him, said he was going to kill him, and then struck Long on the back of the head as he turned to flee. The officers saw that Long was bleeding from the back of the head.

     2. The officers then went to the porch level front door to Beck's apartment, which was identified by Long. Officer Schwerb knocked on the door and Beck opened it. Immediately inside the door was the stairway to Beck's second floor apartment. Beck bore the characteristics of the perpetrator described to the police. He identified himself and the officers immediately placed him under arrest for flourishing a weapon and second degree assault. At that time Officer Chambers advised Beck of his constitutional rights to remain silent and to counsel by orally reading them to him from a card. When he finished, Officer Chambers asked Beck whether he understood his rights and Beck said, "I know all that." In response to Officer Schwerb's questions, Beck admitted he had argued with Long but that he did not have a gun.

     3. Beck then offered the officers an opportunity to search his apartment. For this purpose, Officer Schwerb handed Beck a Consent to Search form. The form was explained to Beck and he signed it, thereby expressly authorizing the officers to search his apartment. Beck signed the form at 8:35 a.m. <u>See</u> Gov. Ex. 2. Beck did not appear to be under the influence of narcotics or have any difficulty understanding the form. The officers did not threaten Beck or make any promise to him to get him to consent to the search in writing.

     4. The officers then went upstairs with Beck. Officer Schwerb searched the apartment. No weapon was found and nothing was seized from the apartment.

     5. After the officers and Beck went upstairs, apartment manager Eugene Flowers arrived. He did not observe the officer advise Beck of his constitutional rights, he did not see Beck sign the Consent to

Search form downstairs at the front door, and he did not participate in a search of the apartment with Officer Schwerb.[1]

6. Thereafter, Officer Schwerb went outside and searched the backyard of the building. He found a .38 caliber revolver. Schwerb returned to the upstairs apartment, showed the gun to Beck, and asked

---

[1] Eugene Flowers testified on November 26, 2007, as a witness for defendant Beck. He testified that he is the apartment building manager, that he had been called to the building on account of the disturbance, that he saw the victim of the assault with blood on the back of his head, that the victim had yelled that Beck had struck him, that he directed Beck to return to his apartment, that Beck did so, that Flowers also went up into Beck's apartment, that he was there when the officers arrived, that the officers immediately went up the apartment stairs with one of them having drawn his gun (Officer Schwerb having testified that the officers did not draw their weapons), that when the officers entered the apartment Flowers was sitting on the couch in the living room, and that upon entering the apartment the officers handcuffed Beck and had him sit on the couch. Flowers testified that he did not see the officers advise Beck of his <u>Miranda</u> rights. Flowers testified that he helped one of the officers search the apartment for a firearm. When no gun was found, one of the officers went outside and Flowers remained inside the apartment. Flowers testified that shortly thereafter the officer returned to the apartment, that the officers had Beck stand up, that one of Beck's handcuffs was removed, that the officers then had Beck sign the Consent to Search form, and that an officer told Beck, "You want to fuck with me, I'll fuck with you." Flowers testified that the officers placed the handcuffs back on Beck and led him away.

The undersigned credits the officers' testimony, over that of Mr. Flowers to the extent that it differs from the officers' testimony. By Mr. Flowers's and the officers' testimony, there was much confusion outside the apartment building on account of the armed assault. The undersigned believes it is unlikely that Mr. Flowers accompanied an armed assault perpetrator into his upstairs apartment before the police arrived and was sitting in a chair when the officers entered the apartment. Also, the Consent to Search form, Gov. Ex. 1, bears the time of 8:35 a.m., which is nine minutes after the automated police Calls For Service Report (CFSR), Gov. Ex. 2, shows that the officers arrived on the scene. This would have been a reasonable period of time for the officers to learn what had happened and then go to the front door of Beck's apartment. The CFSR also records that the officers completed the investigation at 9:34 a.m. Flowers's testimony that the officers had Beck sign the form shortly before they all left the apartment is entirely inconsistent with the times recorded on the CFSR, the time recorded on the Consent to Search form, the amount of time necessary to investigate the incident, to search the apartment, to search the backyard, and to complete the investigation by 9:34 a.m.

him whose it was. In response, Beck said that he had messed up, that he had argued with Long, that when he knew the police were coming he threw the gun outside the residence, and that he was a felon and was not supposed to have a firearm. The officers did not threaten Beck or make any promise to get him to make this statement.

    7. Thereafter, Officer Schwerb showed the gun to DeWayne Long who identified the gun as the one Beck used on him.

## DISCUSSION

The motion to suppress should be denied. The warrantless arrest of defendant was lawful under the Fourth Amendment because it was based upon probable cause. Probable cause to arrest without a warrant exists when the police have information sufficient to cause a reasonable person to believe that the defendant had committed an offense or was then committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). The officers knew defendant fit the physical characteristics of the perpetrator, he came to the door of the perpetrator's apartment, and he identified himself.

The officers lawfully entered defendant's apartment without a warrant for two reasons. First, to safeguard the safety of the public, they were authorized under the Fourth Amendment to enter the residence to investigate the exigent circumstances of the presence and recent use of a firearm by the defendant. This exigent circumstances exception to the warrant requirement justified immediate entry by the officers because of the apparent public safety risk from the perpetrator being at large, the person suspected of the violent activity could flee, and the suspected perpetrator could destroy evidence, which defendant apparently attempted to do. Michigan v. Tyler, 436 U.S. 499, 509 (1978); Warden v. Hayden, 387 U.S. 294, 298-99 (1967); Ker v. California, 374 U.S. 23, 42 (1963).

Also, defendant, perhaps because he knew the firearm had been thrown out of the apartment, orally and in writing consented to the entry of the officers into the apartment to search for the weapon. See United States v. Matlock, 415 U.S. 164, 171 (1974); cf. Illinois v. Rodriguez, 497 U.S. 177, 181-82 (1990).

The firearm seized from the backyard of the apartment building should not be suppressed. Defendant has not shown that he has standing to complain about the officer entering a common area of the building in which he is one of the tenants, and it is unlikely that he could do so, because tenants of a multi-unit residential building have no legitimate expectation of privacy in common areas. United States v. Mendoza, 281 F.3d 712, 715 (8th Cir. 2002).

The statements by the defendant, in response to Officer Schwerb's question, set forth in Findings 2 and 6, should not be suppressed. Upon being arrested, defendant was advised of his constitutional rights to remain silent and to counsel, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966). He expressly stated he knew his rights. Defendant thereafter impliedly waived these rights when he answered the officer's questions. North Carolina v. Butler, 441 U.S. 369, 373 (1979); Thai v. Mapes, 412 F.3d 970, 977 (8th Cir. 2005). No unlawful coercion, promise, threat, or deceptive tactic was used to induce defendant to make the statements. Thai, 412 F.3d at 977.

Whereupon,

**IT IS HEREBY ORDERED** that the motion of the government for a pretrial determination of arguably suppressible evidence (oral motion Doc. 25) is denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress evidence and statements (oral motion Doc. 23 and Doc. 30) be denied.

The parties are advised they have until January 2, 2008, to file written objections to this Order and Recommendation. The failure to file timely, written objections may result in a waiver of the right to appeal issues of fact.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 13, 2007.