UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:07-CR-572 CEJ |
| | ) | |
| DARWIN BECK, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pursuant to 28 U.S.C. § 636(b), the Court referred all pretrial matters in this case to United States Magistrate Judge David D. Noce for determination and recommended disposition, where appropriate. On December 13, 2007, Judge Noce issued a Report and Recommendation with respect to the motions filed by the United States and defendant Darwin Beck relating to the issue of suppression of evidence and statements. The defendant filed timely objections to the magistrate judge's recommendations that his suppression motions be denied.

Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed *de novo* the findings and conclusions of the magistrate judge to which objections are made. In conducting its review, the Court has read the transcripts of the evidentiary hearings before the magistrate judge. Having done so, the Court concludes that the factual findings made by Judge Noce are supported by the evidence and that his legal conclusions are correct.

**I. Discussion**

The testimony establishes that on September 25, 2007, two St. Louis Metropolitan Police Department officers, Steven Schwerb and Jason Chambers, were dispatched to a four-unit apartment building located at 4735 McMillan in response to a 911 telephone call that someone had flourished a firearm. The officers arrived at 8:26 a.m., approximately two minutes after the call was received, and knocked on the door of the apartment occupied by DeWayne Long, the person who had made the call to the police department. Mr. Long, whom the officers observed to be bleeding from his head, stated that he had been struck with a gun by defendant Darwin Beck who lived in the apartment next door.

The officers then knocked on Beck's door and placed him under arrest when he answered. Officer Chambers read the <u>Miranda</u> warnings to Beck, advising him of his rights to remain silent and to counsel.[1] When asked whether he understood his rights, Beck responded, "I know all that." Beck further stated that he he'd been involved in an argument with Mr. Long, but he denied having a gun. Beck then offered to let the officers search his apartment. At that point, the officers presented a Consent to Search form to Beck and explained to him what it was. Officer Chambers removed Beck's handcuffs and Beck signed the form. Beck did not appear to be under the influence of alcohol or drugs, and he did not appear to have any difficulty understanding the form. The officers did not draw their

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 478-79 (1966).

weapons, and they made no threats or promises to Beck.  The Consent to Search form bears the time of 8:35 a.m.

Beck was re-handcuffed and was escorted upstairs to his apartment.  He remained in the living room with Officer Chambers while Officer Schwerb conducted a search.  No evidence was seized from the apartment.  Officer Schwerb then went outside to continue the search.  After he left, the apartment manager, Eugene Flowers, arrived.  Officer Schwerb returned shortly thereafter, holding a .38 caliber revolver that he'd found in the back yard.  In response to questioning, Beck stated that he'd thrown the gun into the back yard when he learned the police were coming and that he wasn't supposed to have a gun because he was a convicted felon. Again, there were no threats or other coercive means employed by the officers.  Beck was then taken to the police car, and he and the officers left the scene at 8:58 a.m.

Mr. Flowers testified that he received a phone call from Mr. Long, who stated that Beck had hit him with a gun.  Mr. Flowers, who lived approximately two miles away, arrived at the apartment building and saw a group of people outside, yelling and arguing.  He also saw Mr. Long who was bleeding from the head.  Mr. Flowers testified that he arrived before the police, and that he walked Beck toward the apartment building.  As he was walking up the stairs, someone yelled that Beck had a gun.  According to Mr. Flowers, two police officers arrived and ran up the stairs to Beck's apartment, with a gun drawn.  They entered the apartment, handcuffed

Beck, and sat him on the sofa in the living room. Mr. Flowers testified that he helped the police officers search Beck's apartment for a gun, but no weapon was found. Mr. Flowers then returned to the living room and sat with Beck while one of the officers went outside. When the officer returned, according to Mr. Flowers, he ordered Beck to stand up, removed one handcuff, and handed Beck a piece of paper to sign. After Beck signed the paper, the officer told him, "You want to fuck with me, I'll fuck with you," and replaced the handcuff. Mr. Flowers testified that the officers took Beck outside and kept him there for about thirty-five minutes before taking him away. Mr. Flowers testified that he never heard either officer give the Miranda warnings to Beck.

Mr. Flowers testified that he was not friends with Mr. Long or Beck; he knew them only as tenants and only by their nicknames. He'd never had a problem with Beck, but he knew that Beck and Mr. Long had argued in the past.

The defendant does not challenge the lawfulness of the seizure of the firearm from the back yard. Indeed, he has not shown that he has standing to challenge the seizure of evidence from a common area of the apartment building. See United States v. Mendoza, 281 F.3d 712, 715 (8th Cir. 2002). Additionally, there can be no Fourth Amendment challenge to the search of Beck's apartment as no evidence was seized from it.

There is, however, a dispute as to whether the Beck was given the Miranda warnings before he was questioned about the gun found

in the yard. On this issue, the testimony of the police officers and that of Mr. Flowers sharply differ, thus calling into question each witness's credibility. For the following reasons, the Court concludes that the government's evidence is the more credible.

The documentary and recording evidence submitted by the government establish a timeline of the events of September 25, 2007, beginning with the 911 call and ending with the officers' departure from the scene with Beck in custody. This evidence is consistent with the officers' testimony about their arrival at the apartment building and the actions they took when they got there (*i.e.*, speaking with the victim, obtaining Beck's consent to search, and searching the apartment and the back yard). This evidence shows that the officers were at the scene for 32 minutes. If the officers had completed their work at the scene, there would have been no reason for them to remain outside for an additional 35 minutes as Mr. Flowers claims they did.

Additionally, there are reasons for discrediting Mr. Flowers' testimony. Mr. Flowers testified that Mr. Long had called him about the assault, and he saw that Mr. Long had been injured when he arrived at the apartment building. Also, Mr. Flowers was told by the crowd that the defendant had a gun. It seems unlikely that Mr. Flowers would accompany an armed assailant into a building before the police arrived. Equally unlikely is that the police would allow a civilian to participate in a search for a firearm. To do so would

have posed not only an unnecessary risk of danger, but a risk of tainting the evidence as well.

Based on the report by Mr. Long and the police officers' observation of his physical condition, there was probable cause to believe that Beck had committed a crime, and no warrant was required for the arrest.  See United States v. Watson, 423 U.S. 411, 418 (1976).  The Court finds credible the testimony that Beck was given the Miranda warnings prior to being questioned by the police.  He told the officers that he understood his rights to remain silent and to an attorney, and he voluntarily answered questions about the gun.

## II. Conclusion

For the foregoing reasons, the Court overrules the defendant's objections to the magistrate judge's findings of fact and conclusions of law.  Further, the Court concludes that there is no factual or legal basis for suppressing the evidence or statements obtained from the defendant.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge David D. Noce is sustained, adopted, and incorporated herein.

**IT IS FURTHER ORDERED** that the motions of defendant Darwin Beck to suppress evidence and statements [Doc. # 23 and # 30] are **denied**.

_____
CAROL E. JACKSON

UNITED STATES DISTRICT JUDGE

Dated this 17th day of January, 2008.